COMMERCIAL CREDIT CO. *v.* SPENCE.

(Division A.  Nov. 14, 1938.)

[184 So. 439.  No. 33391.]

294

Chambers & Trenholm, of Jackson, for appellant.

Harold Cox and Barnett, Jones & Barnett, all of Jackson, for appellee.

Griffith, J., delivered the opinion of the court.

Appellee as plaintiff instituted an action against appellant charging that an authorized agent of the latter had committed a gross trespass against appellee in the forcible seizure of an automobile belonging to him and in his possession. Judgment was recovered by appellee, and both a direct and a cross-appeal have resulted.

On October 21, 1935, appellee purchased a Packard car, and as part of the consideration gave to the seller a note payable in twelve installments of $82.67 each, due in a series of from one to twelve months, the last being due on October 21, 1936; and to secure the payment

of the note, executed a contract termed a "conditional sales agreement" by which the seller retained title to the automobile until all installments were paid. The notes and security were soon thereafter sold and assigned to appellant.

The contract provided inter alia that if the purchaser should fail to pay the note or any installment thereon, the seller or his assigns or representatives "may take possession of said car . . . wherever it may be found, and may enter any premises therefor without notice or demand to purchaser and without legal process, and purchaser waives all claims for damages caused thereby."

It is admitted by appellant that before the date of the trespass, all installments save the last, due on October 31, 1936, had been paid; and it is admitted that theretofore appellee had notified appellant that the original of the note and sales contract would have to be delivered up to him on and at the time of the payment of the last installment, it appearing that said documents were not in the branch office of appellant where the previous payments had been made and accepted.

Appellee had the right to make the stated demand under section 2730, Code 1930, which plainly provides that "The instrument must be exhibited to the person from whom the payment is demanded, and when it is paid must be delivered up to the party paying it." The wisdom of such a requirement on the payer's part is amply demonstrated by what happened in Adler v. Interstate Trust & Banking Company, 166 Miss. 215, 146 So. 107, 87 A. L. R. 347, in view of which we would probably hold, if it were necessary to a decision in this case, that, as to any extra-judicial action, no payee is entitled to consider a payer in default on any negotiable instrument or contract without producing the instrument at the time and place where the payee requires the payment to be made, demand for such production having been made by the payer. 8 Am. Jur. 377; 10 C. J. S., pp. 881, 882.

We make no definite decision upon the point mentioned in the two foregoing paragraphs, first, because not necessary to the disposition of this appeal, and, second, because the evidence is in much confusion in respect to the alleged efforts of appellee to have an actual exhibit of said note and contract and its surrender on payment, and as to the alleged efforts of appellant to make such an exhibit. It is sufficient to say here that the jury was well warranted in the conclusion that the misunderstanding, both of fact and of the relative obligations of the parties, in respect to the production of the note and contract, was what caused the delay on the part of appellee in the payment of said last installment, and that appellant should have so apprehended.

Some three or four weeks before January 14, 1937, appellee and his wife had gone to Durant, Mississippi, the former home of the wife, and where both appellee and his wife were well known. They were living at the Hotel Durant. On that day appellee was absent, but his wife was in the hotel and had the keys to the car, which was parked in the area maintained by the hotel for the placing of the cars of its guests. On that morning the New Orleans office of appellant, which had been handling this matter, telephoned their Jackson office requesting that a representative of the latter go to Durant and collect the said last installment or else seize the automobile. The representative last mentioned did not have the note or contract, the same being at that time in another state; nevertheless, he proceeded at once to Durant, and inquired at the hotel for appellee, and being informed that appellee was absent, the representative made no further inquiry but went in search of the car and found it in the area aforesaid, the car being closed, locked and in gear. Thereupon the representative procured a tool of some sort and broke out one of the windows, and thereby obtained access to the inside of the car, released the gears, and had the car towed to a storage room, where he left directions that it was

not to be delivered to any person except upon order from appellant.

At noon appellee's wife discovered that the car was missing and thought it had been stolen. A search was immediately instituted; and it was then discovered what had been done. Appellee was notified by his wife and returned that night. He telephoned appellant's said representative and, in that conversation, appellee asked why the representative had not seen his wife before taking the course he did, to which the representative replied that he did not consider that he owed him (appellee) that much respect. The car was afterwards delivered to appellee, but in its damaged and unrepaired condition; the last payment was made, and the note and contract surrendered.

Contracts of purchase of personal property, reserving title until purchase price paid, and giving the right to the seller to retake the property upon default of payment, are but as security for the purchase price, and while sufficient to maintain replevin or a peaceable repossession, one without violence either to the owner or to the property, upon default of payment, yet when possession is recovered by seller or his assignee he must still deal with it as security and with reference to the equitable rights of the purchaser. Roberts v. International Harvester Co. (Miss.), 180 So. 747.

Under such a contract, the authoritites are in substantial agreement that the right to take the property from the possession of the other party does not justify the use of force to take it—it must be done without force or violence, and if possession cannot be so obtained, then resort must be had to the process of the courts. The rule is sufficiently covered in Singer Sewing Mach. Co. v. Hayes, 22 Ala. App. 250, 114 So. 420. And it would be manifest, even in the absence of adjudication of it, that the rule could, in no event, admit the use of force or violence under this type of contract, leaving aside others. The majority of people are honest and yield peaceable

obedience to their contractual obligations. When they do not so yield, it is, in most cases, because there is some reason worthy of impartial examination or consideration why they do not. To allow the holder of such a contract to be his own judge, and to execute his judgment in any violent or forcible way he might choose, would be contrary to good order would be provocative of retaliatory violence and breaches of the peace; wherefore, as a matter of public policy, no such right can exist.

Under the facts, as stated, the conduct of appellant here in breaking into the automobile and taking it by that means was a trespass; and under all the circumstances the offense is properly to be characterized as an aggravated and oppressive trespass, for which punitive damages are allowable in the discretion of the jury; and the jury was properly instructed on that feature.

The jury returned a verdict for $2,500. On the motion for a new trial, one of the grounds of which was that the verdict is excessive, the court, after consideration of the motion and in response thereto, entered the following judgment:

"This cause this day coming on to be heard at the regular February, 1938, term of this court, on motion of the defendant for a new trial, and the court having fully heard and considered the same, and being of the opinion that the motion is well taken only insofar as it complains of the excessiveness of the verdict, and that defendant ought to have a new trial on the question of damages alone unless the plaintiff will enter a remittitur in the amount of $1,250, so as to allow the verdict to stand for the amount of $1,250 with costs.

"The plaintiff thereupon fully reserving his exceptions to the ruling of the court on said motion for a new trial being confronted with the necessity of consenting to such remittitur, or having the court order a new trial for both liability and damages, doth under such compulsion consent to a remittitur in said amount of $1,250,

with full reservations and exceptions to any error of the court in ordering the same.

"It is therefore ordered and adjudged by the court that the judgment heretofore entered in this cause in the amount of $2500 be and the same is hereby vacated, and it is now ordered and adjudged by the court that said plaintiff, J. W. Spence, do have and recover of and from said defendant Commercial Credit Company, the said sum of $1,250, with six per cent interest thereon from ———— date ———— together with all costs of this cause, and for all of which proper process may issue; and that this judgment shall be entered on the minutes of this court in the place and stead of and to supersede the said judgment in the amount of $2,500 heretofore entered in favor of said plaintiff against said defendant in this cause, and to all of which action of the court in reducing the amount of said judgment on said motion for a new trial, the plaintiff excepted and said exception was allowed by the court. The defendant excepts to the action of the court in disallowing it a new trial on the question of liability; and prayed and obtained an appeal in open court to the Supreme Court of the State of Mississippi."

Appellee has prosecuted a cross-appeal and maintains that the amount of a verdict composed, as here, largely of punitive damages is not reviewable by the court, except in rare cases, among which, as appellee contends, this case is not one; and that the consent of appellee to the remittitur was compulsorily obtained.

When the order of the court was made, or was about to be made, as hereinabove quoted, appellee had two elections: (1) To consent to the remittitur and take a final judgment for the remainder, or else (2) to decline the remittitur and enter upon a new trial on the issue of damages. After the new trial was had, appellee on appeal could preserve the record on the first trial, and then seek to have the first verdict and judgment reinstated. That this is the course to be taken was definitely foreshad-

owed in Railway Co. v. Davis, 69 Miss. 444, 13 So. 693, and has been followed from that day, as the proper practice.

Appellee was entitled to a peremptory instruction on the actual damages, and to the instruction permitting the jury in its discretion to assess punitive damages. The verdict and judgment as it was finally entered is not excessive, and the cross-appeal is not maintainable; hence the judgment must be affirmed both on direct and on cross-appeal.

Affirmed.