FURCHES MOTOR Co., et al. *v.* ANDERSON.

Dec. 15, 1952

No. 38519 12 Adv. S. 10 61 So. 2d 674

*W. M. Whittington, Jr.,* for appellants.

*Maurice R. Black* and *J. C. Neill,* for appellee.

ETHRIDGE, J.

Appellee, Amos Anderson, plaintiff below, obtained a judgment in the Circuit Court of Carroll County, against appellants, Furches Motor Company, Inc. and its manager, V. P. Chamblee, for damages for the wrongful seizure and possession of an automobile sold by Furches Motor Company to Anderson under a conditional sale contract. By agreement the case was tried without a

jury, and the circuit court rendered a judgment for Anderson for both actual and punitive damages against both defendants in the sum of $527.30. The principal questions involved are whether a misdescription of the automobile in the conditional sale contract rendered invalid the repossession clause in that contract, and if not, whether the manner of the repossession was unlawful and wrongful.

The appellee, Amos Anderson, lives in the Town of North Carrollton in Carroll County. Appellant Furches Motor Company (hereinafter referred to as Furches) has its place of business in Greenwood, Leflore County. It is engaged in the business of selling both new and used cars. Appellant, Chamblee, is manager of that company and its secretary-treasurer. On March 20, 1950, Anderson purchased from Furches a 1947, second-hand Ford automobile. The transaction was handled by Chamblee and executed in Greenwood, with a conventional conditional sale contract. That contract stated at its top ''Original for Universal C. I. T., Conditional Sale Contract''. The date was March 20, 1950. The purchaser was designated as Amos Anderson, the seller as Furches Motor Company. The error was made in describing the car sold. The contract stated it was a 1948 Ford DeLuxe Tudor, ''Motor No. 899A1983033''. It reflected that appellee paid in cash $425, leaving a ''time balance'' of $945.84, ''payable at the office of Universal C. I. T. Credit Corporation''. The contract stated that the balance of $945.84 was payable in twenty-one successive monthly installments beginning on May 2, 1950 ''in the amount of $945.84. . .'' It is agreed that the amount of monthly installments stated in the contract was a typographical error, and that they were $45.04. Title was retained in Furches ''or Universal C. I. T. Credit Corporation (hereinafter called Universal C. I. T.) if this contract is assigned to it, until such balance is fully paid''. The purchaser agreed ''to settle all claims against seller directly with seller and not to set up any such claim in any

action brought by Universal C. I. T. . . . The holder may fill in blanks and correct patent errors herein''. The contract further provided:

"If Customer defaults on any obligation under this contract, or if the holder shall consider the indebtedness or the car insecure, the full balance shall without notice become due forthwith, together with a reasonable sum (15% if allowed by law) as attorney's fees, if this contract is placed with an attorney. Customer agrees in any such case to pay said amount or, at holder's election, to deliver the car to the holder, and holder may, without notice or demand for performance or legal process, enter any premises where the car may be found, take possession of it and custody of anything found in it, and retain all payments as compensation for use of the car while in Customer's possession. The car may be sold with or without notice, at private or public sale (at which the holder may purchase) with or without having the car at the sale; the proceeds less all expenses shall be credited on the amount payable hereunder; Customer shall pay any remaining balance forthwith as liquidated damages for the breach of this contract and shall receive any surplus.''

Appellee, Anderson, signed the contract, and immediately after his signature is an assignment of it to Universal C. I. T. by Furches, by its officer Chamblee. Assignor Furches warranted to Universal C. I. T. that the contract was valid and in general guaranteed its enforceability.

Immediately after buying the car on March 20, Anderson took it to his home, about fifteen miles from Greenwood, in North Carrollton, and retained possession of it for a period of about eight months until its repossession. One mistake in the contract was in the description of the car as a 1948 Ford rather than a 1947 Ford. The motor number as given on the contract was No. 899A-1983033. It should have been No. 799A-1983033. The only difference in the correct number and that stated

on the contract was in the first figure, which should have been "7" rather than "8". As to these models the first figure indicates whether the car is a 1947 or 1948 Ford. The appellant concedes that these errors constituted a breach of warranty. But there was no testimony that they were intentional misrepresentations or anything other than erroneous, unintentional errors, as stated by appellants. Chamblee testified that the mistake arose because the 1947 and 1948 models are almost exactly similar in physical appearance; that the car had been misrepresented to Furches as a 1948 Model when it was received by the company as a trade-in by another customer; that it had been carried on the stock records of the company as a 1948 model; and that Chamblee and the company did not discover this error until it was called to Chamblee's attention by Anderson seven months after the sale. This was apparently done on November 2 when Anderson went to the C. I. T. office in Greenwood to advise that company, assignee of the conditional sale contract, of the error. Anderson said that when he advised Chamblee of the mistake, Chamblee offered him $50 for the difference in value of the two cars, but that he refused that offer. Chamblee said that he had checked the book used in the trade for valuing these models, that the difference between the loan value of the two was $60, and that he offered Anderson that amount not because there was any difference in value of the two cars (he did not think there was), but in order to compromise the claim and to keep the customer's good will. At any rate, whatever offered to settle the warranty claim which was made by Chamblee was not accepted by Anderson.

The first payment on the car was due May 2, 1950, and appellee paid it May 13. The second one was due June 2; it was paid June 30. The third payment was due July 2; it was paid August 5. The fourth payment was due August 2 and was paid September 7. The fifth payment was due September 2, and paid all except two dollars on September 22. The sixth payment was due October 2,

and paid October 18. The November 2 payment was not paid. Hence at the time of the repossession of the car on November 22, appellee was in default on the September 2 payment in the amount of $2, and on the November 2 payment in the full amount of $45.04, being a total delinquency of $47.04.

Appellants also sought to sustain a repossession under the "insecurity clause" of the contract, but the great weight of evidence indicates that there was no basis for application of that provision. In view of the judgment of the trial court, we must assume that it found to that effect.

On November 22, Chamblee called Dan Weeks, Universal C. I. T. office agent in Greenwood, and asked about the status of appellee's account. Upon Weeks advising him of the delinquency, and in response to Chamblee's inquiry, Weeks, acting for Universal C. I. T., authorized Chamblee to either collect the delinquency or repossess the car. Weeks testified that it was "standard procedure" for Universal C. I. T. to authorize local dealers to collect or repossess under these circumstances, and that he had an "implied authority from C. I. T." to do this. The Circuit Court assumed that Weeks had this authority from C. I. T. to authorize Chamblee to collect or repossess, and also found that Chamblee "acting for the C. I. T. Corporation, repossessed this automobile". In the late afternoon Chamblee and another employee of Furches, Sterling, drove to Anderson's home in North Carrollton for that purpose. They were advised that Anderson was not in. They then drove around town looking for him, and failing to find him returned to Anderson's house a second time, but he was still not in. They then drove back to town and passed Anderson's car being driven in the opposite direction. They turned around and followed it. An unidentified man parked it at the Lee Motor Company.

Chamblee asked the man whether this was Anderson's car, and upon being told that it was, he informed him that

it was being repossessed for default in payments, and that Anderson could get the car back upon making the back payments. The man made no protest. The car was parked with its doors closed. The key was in the ignition switch. Sterling got into the car, started the engine, and began driving it back to Greenwood. Chamblee returned again to Anderson's house, but still not finding him, left another message with the people there that Anderson could come to the C. I. T. or Furches office, make the payments in default and regain the car. The time of the repossession is not fixed exactly, but it was after dark, sometime between the hours of 6:30 and 8:00 P. M. There is some dispute as to whether the car was parked on a public street in front of Lee Motor Company or was parked either in part or entirely on the property of that company. Appellee testified that he had left his car that day with that company to wash and grease it, that he was out of town at the time. He had told them to leave his car at the motor company when they closed up, with the key in it, so he could pick it up. Chamblee and Sterling brought the car to Greenwood and stored it at Furches Motor Company.

On the next day, November 23, Anderson, his employer Beck, and his attorney, Neill, came to Greenwood to inquire about the car. Chamblee talked with them at the Furches office. Chamblee advised Neill that if appellee would pay the amount of the delinquency, he could get his car. Neill, appellee's attorney, told Chamblee that Anderson would do this, provided Chamblee would give Anderson a receipt for the amount paid stating that it was paid under protest and without prejudice to any rights Anderson had for breach of warranty. Neill said that Chamblee offered Anderson the sum of $60 to settle any claim for breach of warranty, but that he took the position that Anderson was entitled to the car without paying the November installment, because Chamblee's offer to settle the breach of warranty claim was for an amount in excess of the delinquency. Chamblee was

willing to give an unqualified receipt, but he stated that he would not and had no authority to qualify the receipt as suggested by Neill. Hence appellee left without paying the delinquency, and never offered thereafter to redeem the car. Eight days after the repossession, on November 30, Universal C. I. T. sold the car at private sale to Furches for $557.80 cash. Later Furches made repairs on the car, which it stated cost $205.96, and resold the car in the regular course of its used car business to another party for $995.

The Circuit Court found that Anderson was in default at the time of the repossession in the amount of $47.04; that Chamblee was acting for Universal C. I. T. Corporation in repossessing the car, but that Universal C. I. T. had no authority to repossess the car at that time, because it had no lien upon it, since the description of the property sold in the conditional sale contract was so faulty and erroneous as to invalidate the contract, including the repossession clause. The court said that Universal C. I. T. had only a stated account owed it by Anderson; and that it could not reform the contract to correctly describe the property. Hence the taking was said to be unlawful, and the court allowed actual damages of $437.20, being the difference between what Furches purchased the car for from C. I. T. and what it sold it for, and $100 punitive damages, or total damages of $537.20.

The original declaration was in two counts, for breach of warranty, and for a wrongful repossession or conversion. Before the trial plaintiff elected to proceed under count two, so the court ordered the deletion of the count for breach of warranty. The suit was developed as an action for damages for conversion or wrongful repossession.

The contract of conditional sale upon which the repossession was based was a valid and enforceable instrument. The only ambiguities in the instrument were with reference to the year in which the Ford car was made

and its serial number. Although the authorities vary in the applicable rule, we think that under the present circumstances the better one is stated in 47 Am. Jur., Sales, Sec. 861, as follows: "Although a mistake in a serial number of an article or one of its parts may nullify a description where the number is the only method of distinguishing between articles of the same type, it is generally held that a mistake in the serial number will not vitiate the description, where there are other facts given in the description by which the property can be identified." See also Anno. 65 A. L. R. 714, 715 (1930).

This controversy is between the original parties to the contract. It is undisputed that the Ford which was repossessed was the Ford which was sold to appellee under this conditional sale contract. The repossessing party, Universal C. I. T., purchased for value and apparently without notice of the errors. The contract contains facts other than the serial number and year-make of the car which warranted the use of extrinsic evidence to identify it. The date of the sale is given as March 20, 1950. This is the only car sold on that date by Furches to appellee. The name of the seller is given. The purchase price, and date of first installment due are stated. The motor number itself is correct except for the first figure. These are facts in the description, other than the errors, by which the car can be identified.

Mississippi has applied the foregoing rule in Young v. Salley, 83 Miss. 362, 35 So. 571 (1903). Young sold to Harper a mare, with retention of title in Young, under the following instrument: "Sixty days after date I promise to pay D. B. Young $65 for one mare. The title of said mare is to remain in D. B. Young until paid for. This 8 July, 1902.

T. J. X. Harper."

Salley purchased the mare from Harper, the conditional vendee. Young brought an action of replevin against Salley for "one sorrel blaze face mare," and offered as evidence the quoted instrument. Salley ob-

jected on the ground of the insufficiency of the description of the mare. The trial court sustained that objection. Young then offered to prove that the mare seized in Salley's possession was the identical one which was the subject of the conditional sale to Harper, and that Salley knew of the retention of title in Young when he bought the mare from Harper. The court held that the instrument was void for insufficient description. On appeal the case was reversed and remanded, and it was said:

"The doctrine of ambiguities and voidness for uncertainty of description has no pertinency to this case. Young had the right to his own mare, whether found in the hands of Harper, his conditional vendee, or any purchaser from Harper, with or without notice of the reservation of title, . . . The decision must be precisely as it should be if Harper had never disposed of the property and the controversy was between Young and Harper. In such case, surely, Young could show, as between them, that he sold a mare to Harper, and delivered the particular mare bargained for, and took the paper referred to in order to evidence the price agreed on and his reservation of title until payment made. If he could do this in a case between him and Harper, he may, under the authorities cited, do so in a case against a purchaser from Harper with or without notice, within three years from the time of delivery of the property to Harper. . . . The burden was on Young to prove that the mare was his, that the sale was conditional, and that the condition had not been complied with. Ketchum v. Brennan, 53 Miss. 607. To this he should have been permitted to show the paper and to identify the mare as the one delivered under it."

 And so in the instant case appellants had the right to prove, and did prove, by extrinsic evidence that the car which was sold under this contract to appellee was the same car which was repossessed. The contract was not void for uncertainty of description.

At the time of the repossession it is also undisputed that appellee was in default under his contract in the amount of $47.04. Hence this condition precedent to repossession existed. To offset this fact, appellee argues that he had a claim or counter claim against appellant Furches Motor Company for damages for breach of warranty, and that since Chamblee had recognized that Furches owed Anderson at least $60 on this claim, Furches owed appellee more than the delinquency. However, the repossession was not by Furches but lawfully by Universal C. I. T. A claim for breach of warranty against Furches cannot be used to negative a right of repossession in C. I. T. Moreover, there was no agreement liquidating any claim against Furches, since both parties failed to agree as to its amount. The trial court found that the repossession was by Chamblee acting as agent for Universal C. I. T. ▆▆▆ The right to repossess in that corporation which owned the contract at the time, was further defined in the instrument, which stated: "Customer agrees: . . . to settle all claims against the seller directly with seller and not to set up any such claim in any action brought by Universal C. I. T." The acts complained about by appellee in this case were acts of repossession of this car by Universal C. I. T. through its then agent, Chamblee. Anderson's unliquidated claim for breach of warranty against Furches would not prohibit the repossession here by Universal C. I. T. The rules referred to by appellee in 47 Am. Jur., Sales, Sec. 888, 948, deal with the effect of a breach of warranty upon the right to recover possession. The right is there recognized but the remedy is limited. Here the situation is entirely different: The suit is by the vendee for wrongful seizure. We hold the repossession by the assignee of the contract was lawful. Hence the gravamen of this action has no factual basis.

Appellee testified that when he went to the C. I. T. office in Greenwood on November 2 with reference to that payment, and when he advised Weeks, the office

manager, about the car being a 1947 rather than a 1948 Ford, Weeks told him that he did not have to pay the November installment until he got his "papers straightened out". Weeks denied that statement, and the circuit court made no express finding as to it. Appellee said that after November 2 he never made any offer to remove the default and get the car back. The conditional sale contract provides that "no change in this contract shall be binding unless in writing signed by an officer of Universal C.I.T." But aside from that provision the circuit court expressly found that appellee was in default on the stated amount due for a period of approximately twenty days at the time of repossession. This finding of the existence of a default is by necessary implication a finding that the trial court did not accept appellee's testimony as to what he said Weeks had told him about the November installment. Hence the contract was in default at the time of the repossession. What happened after the repossession does not affect this suit for conversion. Moreover, appellee never made an unqualified, but only a conditional offer to pay the delinquency.

 The repossession was peaceable and otherwise in compliance with the terms of the contract and the requirements for each repossession as interpreted in earlier cases. In Commercial Credit Company v. Cain, 190 Miss. 866, 1 So. 2d 776 (1941), the agents of the conditional vendor repossessed the car on a public street while the husband of the owner had it in his possession. He objected to the taking but there was no altercation, nor was there any force, violence, or threats thereof. The keys were in the car. The repossession was based upon the insecurity clause of the contract. It was argued that the retaking was not peaceable and was by force because the husband withheld his consent. In reply the Court said:

"This provision is not one, any more than any of the others, which may be revoked by the mortgagor, as would be the effect if he could sterilize it by merely withholding his consent to the exercise of the contract right. If

this were permissible, the clause had as well be omitted from the contract. Under it the mortgagee has the right to take possession, in so far as concerns the manner thereof, over the objections of the mortgagor, so long as openly done at a proper place, and without force or violence or any threat thereof, and when the circumstances are such as to create no apprehension of any violence on the part of the mortgagor, or other person from whom the possession is being taken. The limitations on the manner of the taking and the reasons for the limitations are set forth in Commercial Credit Company v. Spence, 185 Miss. 293, 184 So. 439, and need not be repeated here. The limitations were not transgressed by the mortgagee in the present case, and there was, from a legal standpoint, no actionable wrong on the part of the mortgagee either in exercising its rights under the insecurity clause or in the manner of that exercise.''

The same observations are applicable to the repossession in the present case. It was peaceable and without any force or violence in the exercise of a power granted under the contract. The facts that it was at night and that (we will assume) the car was located on the premises of Lee Motor Company does not negative that conclusion. By the conditional sale contract, Anderson granted the owner of the contract a license to ''enter any premises where the car may be found, take possession of it.'' See 47 Am. Jur., Sales, Sec. 952. Commercial Credit Co. v. Spence, 185 Miss. 293, 184 So. 439 (1938) involved an entirely different situation. There the car was closed, locked, and in gear, and the conditional vendor broke out one of the windows, released the gears and towed the vehicle to a storage room. Perhaps there should be statutory limitations upon methods of repossession by a conditional vendor, in addition to the common-law ones. 47 Am. Jur., Sales, Secs. 951-955. But that is a legislative and not a judicial question. Applying the established precedents to the present circumstances, this reposses-

sion was lawful, and the circuit court erred in holding to the contrary.

For these reasons, appellee's suit for an alleged wrongful repossession or conversion of the car has no basis, and we must reverse the judgment of the circuit court and render judgment for appellants. This is without prejudice to any claims which appellee might have for failure to deal with the property as security, and for breach of warranty. We do not consider here the merits of these or any issues other than those expressly decided in this opinion.

Reversed and judgment rendered here for appellants.

*Roberds, P. J.,* and *Hall, Holmes,* and *Arrington, JJ.,* concur.