## Dearman, et al. *v.* Williams

No. 41020 February 23, 1959 109 So. 2d 316

*Snow, Covington & Shows,* Meridian, for appellants.

*Riddell & Dabbs,* Quitman; *Howard R. Pigford,* Meridian, for appellee.

McGehee, C. J.

The appellee, L. R. Williams, sued the appellants, Eugene D. Dearman and the General Motors Acceptance Corporation, in the Circuit Court of Clarke County, Mississippi, for both actual and punitive damages on account of the alleged trespass on his premises in front of his residence when the said Dearman, acting for and on behalf of the corporate defendant, took possession of one Chevrolet automobile on September 6, 1956 in the absence of the appellee, under the terms and conditions of a written Conditional Sales Contract, which the appellee had executed July 6, 1956 in favor of Reliable Chevrolet Company at Meridian, and which contract had been thereupon duly assigned by the said Chevrolet Company, as seller of the automobile, unto the appellant, General Motors Acceptance Corporation. A judgment was recovered by the appellee against the appellants for damages in the total sum of $5,000.

The automobile was purchased by the appellee from Reliable Chevrolet Company for a total time price of $2,777.20, to be paid in monthly installments of $67.64, the first of which became due and payable on August 15,

1956. The declaration alleged that the total down payment made to the seller on the day of the purchase of the car was the sum of $748.00, and the Conditional Sales Contract and a copy of which was made an exhibit to the declaration, purported to disclose that $100.00 of the consideration was paid in cash, whereas the defendants in their answer alleged that a check for the $100.00 was given by the appellee on an out-of-town bank and that the check was returned to the seller unpaid for the reason that the appellee did not have an account with such bank.

Upon motion of the appellee, the trial court struck from the answer of the defendants the averment as to the said unpaid check of $100.00, on the ground that the non-payment of the check was a matter between the seller and the appellee and with which the appellants had no concern since the finance company purchased from the seller only the paper for the deferred balance on the purchase price. This action of the court is assigned as error since it had a bearing on the question of whether or not the defendants were justified under all the facts and circumstances hereinafter shown to repossess the automobile under the circumstances hereinafter stated. It is contended by the appellee that the action of the trial court in their behalf was immaterial error, if error at all, since the court did not submit to the jury the issue as to the value of the equity asserted by the appellee in the said automobile. However, the defendants were entitled to show that this check was returned unpaid in connection with the proof of all the facts and circumstances involved.

The first installment under the Conditional Sales Contract was not paid on or before August 15, 1956, and the matter of collecting the said installment was referred to the appellant, Eugene D. Dearman, a collector for the General Motors Acceptance Corporation, on August 16 or 17, 1956. This collector contacted the appellee in regard to this past due installment on or about August 21, 1956 and again on August 30, 1956. On one of these dates

the appellee informed the said collector that he had had an agreement with the manager of the Meridian office of the General Motors Acceptance Corporation that the said Corporation would wait on the appellee for the payment of the said installment until August 31, 1956. But he did not pay the installment as promised on August 31, 1956. Thereafter the collector, Dearman, contacted him again on September 5, 1956 when the appellee promised the collector that he would make the payment by not later than 7:30 A. M. of September 6, 1956. The collector met the appellee at the place agreed upon when the latter offered him a $55 Government disability check and his own personal check for the difference between that amount and the monthly installment of $67.64. The collector was unwilling to accept the payment in that manner and insisted that the appellee get his employer, McRae and Company, to cash his personal check and give to the collector the amount of cash needed in addition to the Government disability check. This, the appellee was unwilling to do, but he assured the collector again that he would make the payment for the past due installment at 9:30 o'clock that morning. However, the appellee failed to appear at the time and place agreed upon, and it later developed that he had gone to Quitman in Clarke County that day to attend court and did not return until approximately 8 P. M. of that day.

The appellee testified, however, that after seeing the collector at 7:30 A. M. on that day, he obtained the difference in cash between the $55 Government check and the amount of the August 15, 1956 installment on the car, but he left no word at the place of business of his employer to that effect, and did not telephone to the collector or to the General Motors Acceptance Corporation at any time during that day as to why he had not appeared and made the payment at 9:30 A. M. of that day. In the meantime, the collector checked with the employer of the appellee and learned that he would not return during the day.

At about 4 P. M. on September 6, 1956, the collector, Dearman, accompanied by Mr. Newman, a co-employee at the office of the General Motors Acceptance Corporation, drove to the home of the appellee in the Union community in Clarke County, Mississippi. Upon their arrival, Dearman went to the front door of the appellee's home, knocked on the door and an eleven or twelve year old son of the appellee appeared and told who he was and upon being asked whether his father or mother was at home replied that they were away at work and that his father usually returned home at about 5:30 or 6 o'clock in the afternoon. It seems that the little boy did not know that his father had gone to court at Quitman. The collector told the child that he was going to look the car over, and that upon going to the same where it was parked on the circular driveway in front of the house, he found that the doors of the car were open and that the key was in the ignition, and he remarked to the little boy that it looked like his father had gotten the car ready for him, and that he was from the GMAC office and that he was going to take the car there. In the meantime, Mr. Newman had remained in the car that he and the collector had used in going to the home of the appellee.

As a matter of fact, the collector, Dearman, took the car first to the office of appellee's employer, and not finding the appellee there, he carried the car on to the office of Reliable Chevrolet Company where he delivered the same to a Mr. Hall who inspected the same to ascertain whether or not there was any personal property in the compartment, trunk or elsewhere in the car that did not belong with the car. Mr. Hall executed a receipt for the car and he, Newman, and the collector, Dearman, all testified at the trial that they did not see any articles of personal property in the compartment, trunk or elsewhere in the car, after the same had been searched for that purpose.

The appellee testified that it was his custom to leave his keys in the car and that his pistol and the tools were left in the same, although he did not testify as to the approximate time that he last saw the pistol and tools.

Mr. Heberer was the manager at the Meridian office of the appellant General Motors Acceptance Corporation, and he testified that he had agreed with the appellee not to pick up the car until the 31st day of August, 1956, and on cross-examination the appellee was asked this question: "Q. You told him then (referring to his conversation with the collector on August 30, 1956) that you had made arrangements through Mr. Heberer not to pick the car up until the 31st and you would pay it on that day, didn't you? A. That is the arrangement I made with Mr. Heberer." He further testified that Mr. Heberer didn't say anything about picking up the car but that he agreed to wait on him until August 31 for the payment of the August 15th installment.

The Conditional Sales Contract provides, among other things, that: "In the event purchaser defaults in any payment due hereunder, * * *, the seller shall have the right, at his or its election, to declare the unpaid balance, together with any other amount for which the purchaser shall have become obligated hereunder to be immediately due and payable. Further in any such event, *seller* or any sheriff or other officer of the law may take immediate possession of said property without demand, including any equipment or accessories thereto; and for this purpose *seller* may enter upon the premises where said property may be and remove same. *Seller* may take possession of any other property in the above described motor vehicle at time of repossession, wherever such other property may be therein, and hold same temporarily for purchaser without liability on the part of seller. Such possession shall not affect seller's right hereby confirmed, to retain all payments made prior thereto by the purchaser hereunder." (Emphasis ours.)

And the contract further provides: "In the event of repossession of said property, seller may either sell same at public auction (at which seller may bid) or dispose of same by private sale or otherwise, in such manner and upon such terms as shall be commercially reasonable, without demand for performance, with or without notice to purchaser, * * *."

Much is made of the fact that neither the seller nor its assignee ever gave notice of its intention to declare the entire balance due and payable upon default being made in the payment of any of the installments. However, so far as this record shows, in this case neither the appellant, General Motors Acceptance Corporation, nor the original seller of the automobile ever attempted to collect the entire balance due on the car, unless it was after the appellee had been offered the opportunity to make the payments in arrears, and which he failed to do, but employed a lawyer to bring this suit. The proof shows without dispute that subsequent to the repossession of the automobile the appellee was advised that if he would pay the installment that was in arrears, he could get his automobile returned to him, and after two monthly installments had become in default; he was again advised that upon payment of these two installments he could regain possession of the automobile, but he wanted to pay the one due on August 15, 1956 and be granted a 60-day extension within which to pay the one due in September, 1956. Moreover, Sec. 892, Code of 1942, gave the appellee the right to reinstate the installments under the Conditional Sales Contract as written upon payment of the past due installments, even if the entire indebtedness had been accelerated or attempted to be accelerated by the then holder of the Contract, at any time before a sale of the automobile.

It should be noted here that the Conditional Sales Contract contains, among other provisions, the following: "In the event of the transfer and assignment of seller's

rights hereunder, the word 'seller' shall be understood as referring to the subsequent holder of this contract under such transfer and assignment, * * *.'' In other words the appellant, General Motors Acceptance Corporation succeeded to the same rights under the contract as were acquired by Reliance Chevrolet Company, the seller of the automobile.

■■ ■ Since the purchaser had given his written consent in the Conditional Sales Contract for the seller, or a subsequent holder of the Contract, in the event of default in the payment of the installments when due and payable, the collector, Dearman, acting for and on behalf of the appellant, General Motors Acceptance Corporation, was not guilty of a trespass upon the premises of the appellee when he went to the latter's home and removed the automobile from the driveway in front of the appellee's residence, unless the collector had acted in a wanton, oppressive or malicious manner in doing so, and such was not the case. The plaintiff was treated with all due consideration, and granted one indulgence after another before and after the automobile was repossessed, and he never at any time made a tender of the past due indebtedness. The action of the appellants in repossessing or retaining the car was not wrongful.

The appellee relies primarily on the case of Kirkwood, et al. v. Hickman, 223 Miss. 372, 78 So. 2d 351. But in that case the seller of a stove had entered into the private residence of the purchaser, in her absence from the State and had acted in a wanton, reckless and oppressive manner in removing the stove from her kitchen, spilling water on the floor and smearing soot on the floors of her residence, and as to which the Court said: ''The intentional and high-handed manner of the trespass warranted the jury in assessing punitive damages.''

Moreover, it is significant that in the *Kirkwood case* the Court said: ''It should be noted that the repossession clause in the instant case did not authorize entry

upon plaintiff's premises.'' The Conditional Sales Contract in the case now before us did authorize entry upon the plaintiff's premises to remove the automobile. Then, too, the collector did not invade the privacy of the plaintiff's home but merely removed the automobile from the unenclosed driveway in front of the residence, as to which the plaintiff testified that those had a right to come when they had business with him. There is no proof that the collector Dearman's conduct was characterized by oppressiveness, wantonness or maliciousness, or otherwise in reckless disregard of the legal rights of the plaintiff. In the *Kirkwood* case the Court distinguished the cases of Commercial Credit Company v. Cain, 190 Miss. 866, 1 So. 2d 776; and Furches Motor Co. v. Anderson, 216 Miss. 40, 61 So. 2d 674. Compare the case of Bradley v. Associates Discount Corporation, 92 So. 2d (Miss.) 468.

 We have also concluded that the proof in this record is insufficient to show that the plaintiff's pistol and set of tools were removed from the automobile by the appellants or at their instance. The plaintiff did testify that his pistol was in the compartment of the car and that the $100 worth of tools were in the trunk thereof, but he did not testify as to when he had last seen either the pistol or the tools in the car. He testified that it was his habit to leave the car key in the ignition, and he did not state that he looked either in the compartment or the trunk of the car on the date that the car was repossessed or state as to just when he had last seen these articles of personal property.

On the other hand the collector, Dearman, testified that before moving the car from where it was parked on the driveway, he searched the compartment and the trunk of the car and looked on the inside of the car, and that these articles were not there at that time. Mr. Newman testified that Dearman did not remove anything from the car, and that he followed Dearman from the plaintiff's

home to Meridian and then to the place of business of the Reliable Chevrolet Company where a Mr. Hall signed a receipt for the car after having looked in the compartment, trunk and elsewhere in the car, and Mr. Hall also testified at the trial that none of the articles in question were found therein at the time he inspected the car and executed his receipt therefor on behalf of the Reliable Chevrolet Company.

In view of the foregoing facts, we are of the opinion that the defendants were entitled to the directed verdicts requested by them, respectively.

Reversed and judgment here for the appellants.

*Kyle, Arrington, Ethridge,* and *Gillespie, JJ.,* concur.

ON SUGGESTION OF ERROR

March 23, 1959 109 So. 2d 860

KYLE, J.

After careful consideration of the suggestion of error in this case, we find that we were in error in stating what we did in the last sentence of the first paragraph of our former opinion rendered on February 23, 1959.

We now withdraw that sentence from the opinion and substitute in lieu thereof the following: ''A judgment was recovered by the appellee against the appellants for damages in the total sum of $5,000.00.'' The $1,013.00 referred to as actual damages, consisting of the items mentioned in the last sentence of the first paragraph of the opinion was not mentioned in the verdict of $5,000.00 rendered by the jury, but the issue as to actual damages was erroneously submitted to the jury in some of the instructions for the plaintiff. The evidence as to actual damages was insufficient to show that any of the alleged items of actual damages had been sustained by the plaintiff by reason of any wrongful or unlawful act on the part of the defendants, as shown by the facts stated in the subsequent paragraphs of the opinion rendered in this cause on February 23, 1959. The error contained in the

last sentence of the first paragraph of said opinion was the result of inadvertence which occurred for the reason that the issue of actual damages had been erroneously submitted to the jury, and because the items of which the $1,013.00 consisted, were discussed in the briefs of counsel.

The court reporter and the publishers have been instructed to make the correction in the opinion noted above.

We have carefully considered all of the points mentioned in the suggestion of error, which relate to the decision of the case on its merits. We are of the opinion that the case was correctly decided, and that the decision rendered on February 23, 1959, should be adhered to.

The suggestion of error is therefore overruled.

Suggestion of error overruled.

*McGehee, C. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.