# CHARLESTON.

SUN SAND COMPANY *v.* THE COUNTY COURT OF FAYETTE COUNTY.

Submitted March 25, 1924.  Decided April 8, 1924.

1. APPEAL AND ERROR.—*Judgment Not Reversed for Instruction Permitting Inclusion of Trivial Item of Damages.*

   Where an instruction, in a suit against a county court to recover damages for trespass to a leasehold estate in the construction of a public road through the leasehold, may be construed to permit the jury to include in its verdict a con-

troverted item of $50, even though erroneous the appellate court will not reverse for that cause alone. (p. 214).

2. HIGHWAYS.—*County Court Liable for Building Road Through Lands, Though Contract Let to Independent Contractor.*

In such suit if the damages alleged and proven be such as would naturally flow from the building of the road, and may have been reasonably expected as a consequence of the work to be done in accordance with the plans and specifications, the county court cannot escape liability therefor because it has let the contract to a construction company alleged to be an independent contractor. (p. 216) .

3. SAME.—*Measure of Damages for Trespass to Leasehold by Construction of Road Stated.*

The measure of damages in such case is the amount reasonably necessary to put the leasehold property in substantially as good condition as it was immediately before the injuries occurred. Evidence showing the approximate amount necessary to repair the damages cannot be rejected on the theory that the damages are speculative, indefinite and remote. (p. 218).

Error to Circuit Court, Fayette County.

Action by the Sun Sand Company against the County Court of Fayette County. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*George Love,* for plaintiff in error.
*Osenton & Lee,* for defendant in error.

LIVELY, JUDGE:

The action is trespass on the case for damages to plaintiff's leasehold occasioned by the construction of a county road through plaintiff's premises.

Plaintiff had leased and was developing and operating a ledge of sand rock used in the manufacture of glass. The ledge was on the mountain side five hundred feet or more above the Chesapeake and Ohio Railroad and the product was brought down the mountain side by an incline. Defendant constructed its road along the mountain side and under the incline, causing damages to the plaintiff's incline and trestle, water pipe line, a spring used for domestic purposes

by plaintiff's tenants and employees, the tenements, its side track and private roadway, necessitating among other expenses construction of retaining walls to protect its houses and property against slides, and against the excavated dirt and debris. Plaintiff's actual expenses in repairing the damages amounted to $1,637.73; and the estimated additional expense to fully repair the damages was placed at $1055. Defendant sought to reduce the damages by showing that the retaining walls actually built were longer and higher than necessary and of better material than should have been used; and that in the actual and estimated expense of reparation plaintiff had paid out and proposed to pay out greater sums in labor and material than were actually necessary to repair the damages and restore the premises to as good condition substantially as they were before. On this controversy of fact the jury found for plaintiff the damages above stated. Below the road and near the incline were three tenement houses, and between them the contractor shoveled piles of dirt taken from the road bed. Plaintiff estimated the cost of removing this dirt at $50. Defendant introduced testimony to the effect that plaintiff's superintendent gave permission to defendant to place the dirt there; a fact denied by plaintiff. The county engineer upon complaint of plaintiff's superintendent ordered the contractor to remove this dirt, when, he says, the superintendent remarked that if the dirt piles were leveled down he would be satisfied. The washings from this dirt against the houses and difficulty in passing from one house to the other by reason of the piles is uncontroverted. What influence this controversy had on the verdict cannot be determined. It could make a difference of only $50. at the most; a sum for which we would not reverse, if there be no other error. It is less than the jurisdictional amount which can be considered by this court. This controversy of fact over the item of $50 is the first point of error assigned. It is said that plaintiff's instruction (the only one given for plaintiff) ignored the question as to whether the dirt was piled between the houses by plaintiff's consent. The instruction reads:

"The court instructs the jury that they shall find for

> the plaintiff in this case and assess its damages at such amount as they believe from all the evidence in the case it has sustained and such damages would be the amount reasonably necessary to expend to put the property of the plaintiff in substantially as good condition as it was before the injury resulting from the road work in question."

Granting that it was error to ignore in the instruction defendant's defense of consent for placing the dirt between the houses, it could have resulted in a difference in the verdict of $50 only; a sum not sufficient on which to reverse, as above indicated. *Montgomery* v. *Economy Fuel Co.*, 61 W. Va. 620.

At the close of plaintiff's testimony, and again after all the testimony had been introduced, defendant moved the court to strike plaintiff's evidence, and direct a verdict for defendant. The ground, not stated in the motion, but argued in the brief on which the motion was based is that plaintiff could not recover, because the damages, if any, were caused by the acts of the contractor over whom defendant had no control. It is urged that under the terms of the contract between the county court and the contractor, which is in evidence, the latter was an independent contractor, and he alone is responsible to plaintiff for any damages sustained. This is the second point of error.

The mountain was steep where the road passed through plaintiff's premises and under its incline. The width of the road necessitated the removal of supports under the incline and substitution of different and more costly ones; slides were the result of excavating the road (a side cut on the mountain) according to the plans and specifications, and not the result of carelessness or negligence. The physical conditions were such that the simple construction of the road, digging into the mountain side, caused nearly, if not all, of the damages complained of. Probably there was no necessity for piling the dirt between the tenement houses above referred to. This was a matter of convenience, and it appears that defendant, through William Grafton, its agent, was exercising control over such acts of the contractor, for we find that upon complaint of plaintiff's superintendent he

ordered the contractor to remove it.   We do not deem it important or necessary to determine whether the contractor was in fact an "independent contractor." It may be that as between the employees of the contractor and the county court, the latter would be absolved from liabality for negligent acts of the contractor as an independent contractor—a question not arising here.  Or should the contractor, if he be an independent contractor, deviate from the plans and specifications and do some collateral act incidental to but not reasonably necessary in the performance of the work, perhaps the county court would not be liable.  The county court cannot absolve itself from liability for damages which necessarily or reasonably flow from the construction of a road through the lands or property of another by simply letting the construction to contractors.  For instance, to illustrate: a road is projected through a farm the location and construction of which necessitates the destruction of timber, or a pipe line, or removes the lateral support to the foundation of a house, the county court cannot shift the burden of remuneration for damages upon a contractor, who may or may not be able to respond.  *Walker* v. *Strosnider,* 67 W. Va. 39; where defendant contracted to have a building erected on his lot adjoining that of plaintiff and the excavation for foundation made by the contractor according to the plans of the owner caused the building of plaintiff to fall with consequent destruction to personal property therein. The lateral support to the neighbor's land was removed. The owner was responsible, although he let the work to a contractor, over whom he exercised no direction or control.  The damages were caused from the nature of the work.  In 14 R. C. L. sec. 26 it is said: "Where one plans a work which necessarily involves a trespass on premises of another, he cannot justify the wrongful act by the plea that the work is done by an independent contractor * * * * Thus for instance, a municipality which lets to an independent contractor the work of changing the grade of a street is liable to the nearby owner if the work is such that it forces water or dirt on his premises."   Thompson on Negligence, sec. 648 et seq.  Where the resultant damages are such as might have been reasonably contemplated as a consequence

of the work directed to be done, the employer of an independent contractor doing the work is liable. *Bonaparte* v. *Wiseman,* 89 Md. 12.

The only remaining point of error is that the evidence of estimated expense, repairing the damage (not already repaired), introduced by plaintiff should have been excluded as merely speculative or conjectural; and *Kyle* v. *Railroad,* 49 W. Va. 296; and *Pickens* v. *Boom Company,* 58 W. Va. 11, are cited. One item of damage in the Kyle case was the destruction by fire of a meadow, the grass in which had not ripened for cutting into hay. Evidence of the value of the hay which would have been produced was held to be admissible. It was not merely speculative. Reasonable certainty for computation of damages is all that is required. Exact damages may not always be the subject of exact mathematical calculation. In the Pickens case evidence of the decreasing rental value of a mill, caused by the construction of a boom in the stream, was sustained. It was there said that the damages accruing as the years went by were not visionary or speculative, resting on no other basis than hope, expectation or exaggerated idea of future profits, as was the situation in *Bodkin* v. *Arnold,* 48 W. Va. 108. The damages complained of in the present case are not speculative or remote—they have already come into existence. Shall plaintiff wait until it expends monies to repair and put the premises in substantially as good condition as they were prior to the injuries, before it can recover? The rule of measurement would not be changed. It is true the exact amount which was expended would be a better index of the amount of recovery; but exact measurement of damages is never required. Successful invocation of the theory invoked would prevent recovery of damages to an automobile until the owner had made the repairs and ascertained the exact amount. The amount reasonably necessary to put the property in substantially as good condition as it was immediately before the injuries occurred, is the true amount of damages which should be assessed. The court so instructed.

The judgment will be affirmed.

*Affirmed.*