627 So.2d 833 (1993)
Jimmy HESTER and Pam Hester
v.
J.E. BANDY, Individually, J.E. Bandy d/b/a Coast Auto Sales, Bill Evans, Individually, and Bill Evans d/b/a Southeastern Recovery.
No. 90-CA-0682.
Supreme Court of Mississippi.
December 2, 1993.
*835 Clyde H. Gunn, III, Corban & Gunn, Biloxi, for appellant.
David B. Strain, Coral Gables, FL, for appellees.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
HAWKINS, Chief Justice, for the Court:
Jimmy Ray and Pam Hester have appealed from a j.n.o.v. entered in the circuit court of the first judicial district of Harrison County in favor of J.E. Bandy, doing business as Coast Auto Sales, following a jury verdict in favor of the Hesters. Because the court erred in entering a directed verdict in Bandy's favor because the tortfeasor Bill Evans was an independent contractor of Bandy's, we reverse.

FACTS
Hester was employed as a sheetrock hanger in Harrison County. He, his wife Pam, and five children lived in a mobile home on Marie Road. Pam's mother died from injuries sustained in an automobile accident and Pam received a settlement of approximately $6,000.00. On or about August 7, 1987, the Hesters purchased a 1982 Ford van from Bandy, making a $5,250.00 down payment, with the remaining $2,850.00 to be paid off in monthly installments of $100.00, beginning in September 7, 1987.
While there was no formal security agreement executed, the purchase order did contain the following paragraph:
It is understood and agreed that the Title of Ownership of car as above described does not pass to me until the final cash payment is made. I certify that the car I am trading is free from all encumbrances whatsoever.
Also, the Certificate of Title issued by the State of Mississippi lists Coast Auto Sales as the first/primary lienholder.
The monthly $100.00 payments were made from September, 1987, until August, 1988, by mailing checks or money orders to Coast Auto Sales. The August payment was not made and Karen Bandy, Bandy's daughter-in-law, on September 14 called Pam about the delinquency, and told her the September payment was due also. Karen told Pam that if payment was not made by Friday, September 16, legal action would be taken. At the close of the business day on Friday, September 16, Bandy called Evans, who was in the repossession business, and instructed Evans to repossess the Hesters' van. He was to be paid $150.00 upon completion. At this time, the outstanding balance on the van was approximately $1,700.00.
Evans first looked for the van in the parking lot where Pam was employed, but it was not there. At approximately 3:00 a.m. on Tuesday, September 20, Evans, along with his employee, Bill Christner, went to the Hesters' residence and saw the Hesters' Camaro parked directly behind the van. Evans moved the car in order to get to the van.
Evans hitched the van to the wrecker and was starting to remove it when Jimmy Hester awakened and went outside to see what was going on. He observed the men attaching the van to the truck by way of a "quick snatch harness," and he began yelling at the two men. In his pursuit of the truck and van as they left, Hester fell into a ditch and was injured. He was taken to Gulfport Memorial Hospital. His injuries included a torn rotator cuff to his right shoulder and a scratched and skinned left knee.
On September 20, 1988, Karen Bandy wrote Pam that the vehicle had been repossessed "due to your payment history and for late payments that have not been received," and that they had no alternative but to pick it up. The letter gave her ten days to provide them with an adequate insurance policy, with Coast Auto Sales as loss payee, make a $300 payment for August, September and *836 October, and $150 reimbursement for repossessing the vehicle.
The Hesters' attorney, Clyde Gunn, accompanied them to Coast Auto Sales in Biloxi in order to recover their van. Gunn paid two hundred dollars and the van was returned to them. The record does not show how the $200 payment was applied.
The Hesters filed a complaint for wrongful repossession against Bandy, doing business as Coast Auto Sales, and Bill Evans, doing business as Southeastern Recovery. They alleged Evans was the agent of Bandy, and that on September 20, 1988, Evans had wrongfully trespassed on the Hesters' property, damaged the car, assaulted Jimmy Hester and caused him personal injuries in repossessing the car, all in violation of Miss. Code Ann. § 75-9-503 (Supp. 1992).
Section 75-9-503 Miss. Code Ann. provides in pertinent part:
Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.
The complaint did not charge that the Hesters were not in default, or that Bandy did not have the contractual right to repossess the vehicle in event of default. The entire complaint was predicated upon a wrongful seizure by unnecessary force and a breach of the peace, in violation of Miss. Code Ann. § 75-9-503.
On December 14, 1988, Evans filed an answer of general denial, and in his sixth defense specifically pleaded that Evans was not his agent, but an independent contractor.
On April 26, 1989, Bandy filed a motion for summary judgment, alleging inter alia that Evans was an independent contractor. Evans had been in the repossession business of motor vehicles for six years. Bandy had nothing whatever to do with Evans' repossession except to give him what information he had as to the Hesters' place of residence and employment. Evans had never performed any repossession service for Bandy before this occasion. The two businesses were totally distinct and separate. Bandy thought he was employing a reliable, knowledgeable person to perform this service for him, and contracted with him simply to get the car. He exercised no supervision or control as to the time or place for performing this service. Evans' contracted price for the service was $150.00.
Plaintiffs responded that there was a question of fact as to whether Evans was an independent contractor or agent of Bandy, and also some question (although this was not seriously argued) whether Evans had a security interest under the contract of sale. The sole issue presented for consideration by the circuit judge in the motion and argument thereon was whether Evans in fact was an independent contractor and, therefore, Bandy was not liable, with Bandy claiming he was, and the Hesters claiming he was an employee.[1]
The court overruled the motion for summary judgment.
The instructions submitted by the parties prior to trial only embraced the issues of whether there had been a breach of the peace, or use of unnecessary force, in repossessing the vehicle, and whether or not Evans was an agent of Bandy, as opposed to merely being an independent contractor.
Based on testimony given by Pam, however, the circuit judge at the conclusion of the trial directed that a new and separate issue be submitted to the jury. The record reflects that on Wednesday, September 14, Karen Bandy called Pam Hester about the delinquency, and told her if payment was not made by Friday, September 16, legal action would be taken. Pam testified as follows:
Q. Now, what was said during the conversation in September about the August payment?

*837 A. She told me that some arrangements had to be made by Friday or legal action would be taken and I told her that I would send her a payment in the mail as always on Friday. There would be no need to take legal action.
Q. All right. Did she promise you that she would not take legal action if she did not get a payment by Friday?
A. She didn't say she had to have a payment by Friday. She said something had to be done by Friday.
Q. Ma'am, I 
A. And I told her I would send the payment in Friday and no, sir, she did not say that there would not be legal action taken.
Q. She did not make you any promise that she was not going to take whatever actions that J.E. Bandy legally had, whatever the laws gave him as a right, she never promised you that she was not going to take those, or he was not.
A. No, sir.
Q. Ma'am, why didn't you just hand deliver  you knew the payment was late; you knew the mail was going to take several days; you knew that they were not going to get it on Friday if you put it in the mail on Friday. I just want to hear your explanation, and you may have one, as to why you just didn't take it to them.
A. She said something had to be done by Friday and I did something by Friday. I mailed her the payment as I had done eleven times previous to that. I have never stepped foot back on Mr. Bandy's property since the day we drove off with that van, August the 7th, 1987. I mailed every payment in and why should that one have been any different?
Q. Well, she was telling you that you were now later on that payment than any other payment; is that right? Because that was an August payment.
A. It was 16 days late.
Q. Well, I won't get into an argument that over what you think the contract meant but that was the latest even in your mind the payment had ever been; right?
A. Right. She didn't specify, she didn't say don't mail it, bring it in. She said something had to be done and it was.
(R.209)
On cross-examination Pam admitted that in her deposition she had said that Karen Bandy had made her no promise that if she did something by Friday nothing would be done. (R.328) Pam testified she placed a money order in the mail on Friday, but, according to Bandy, it was never received.
There was no attempt to amend the complaint to embrace any issue that might have been raised by this testimony.[2]
At the close of the trial, the circuit judge reversed his summary judgment ruling, and ruled as a matter of law that Evans was an independent contractor of Bandy's, and, therefore, Bandy was not liable for his acts in repossessing the car under the doctrine of respondeat superior.
The judge then raised on his own, however, the issue of whether or not Bandy had a right to repossess at all in view of Pam's testimony regarding her conversation with Karen Bandy. He held that there was a jury question as to whether or not Pam had been told that if she put the check in the mail on Friday, this would prevent Bandy's repossessing. This was objected to by counsel for Bandy.
Over the objection of Bandy, instruction C-20 was submitted to the jury telling it that if the jury believed from the preponderance of the evidence that the delinquent August, 1988, payment, while late, was nevertheless placed in the mail on Friday, September 16, 1988, "based upon an explicit understanding between Pam Hester and Karen Bandy," and that thereafter Bandy on September 20 had contracted with Evans to repossess the van and a repossession did in fact take place, then Bandy's action in proceeding with repossession *838 was wrongful. The judge gave a peremptory instruction in favor of the Hesters, against Evans, finding that he was liable for the trespass he had committed and had tortiously repossessed the van as a matter of law.
A jury verdict was rendered in favor of the Hesters in the amount of $83,920.20 against both Bandy and Evans. Bandy made a motion for judgment notwithstanding the verdict on the ground that the judge should not have submitted the belated promissory estoppel issue to the jury. The judge agreed and granted j.n.o.v. in favor of Bandy.
The Hesters and Evans then made an out-of-court settlement and the Hesters have appealed from the j.n.o.v. dismissing the complaint as to Bandy.

LAW
Rule 8(a)(1) M.R.C.P. states:

Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain
(1) a short and plain statement of the claim showing that the pleader is entitled to relief ...
The official comment to this rule states:
The purpose of Rule 8 is to give notice, not to state facts and narrow the issues as was the purpose of pleadings in prior Mississippi practice. Consequently, the distinctions between "ultimate facts" and "evidence" or conclusions of law are no longer important since the rules do not prohibit the pleading of facts or legal conclusions as long as fair notice is given to the parties. (Emphasis added)
The Hesters' complaint at no point stated anything about Pam's being told by Karen Bandy that if she placed her payment for the August payment in the mail by Friday, September 16, that Bandy would not repossess. While the complaint does allege that Pam told Karen Bandy that she was placing the August payment in the mail and did so, there is nothing alleged about Karen Bandy making any promise or commitment.
There is not one word in the entire six-page complaint mentioning or even hinting of a conversation, agreement or understanding between Karen Bandy and Pam, or Pam's relying upon some representation or promise made to her. There is nothing about the pleading to give Bandy any notice that the repossession was wrongful because of a promise from Karen Bandy to Pam. Instead, the entire complaint is predicated upon Evans, as agent of Bandy, committing a trespass in going upon the Hesters' property and violating Miss. Code Ann. § 75-9-503 by committing a breach of the peace in repossessing the vehicle.
While it is unnecessary to state facts in detail, it is necessary to state at least enough facts to put the opposing side upon "fair notice" of the basis of the claim. Rule 8, official comment. It would have been quite simple for the Hesters to allege in the complaint that Karen Bandy promised, or Pam was led to believe, from statements made to her by Bandy that if she placed the payment in the mail on Friday no action would be taken. No such allegation was made. There is nothing about the complaint alleging any facts, or making any claim of "promissory estoppel," to put the defendants on notice that the Hesters were claiming that even though they were in default that Karen Bandy had promised Pam that if she put the payment in the mail on Friday, September 16, the van would not be repossessed.
Moreover, in the defendant's motion for summary judgment and in the argument before the circuit judge, it is clear that the Hesters were only contending that the repossession was wrongful because Evans trespassed upon their property and committed a breach of the peace, all in violation of Miss. Code Ann. § 75-9-503, and that he was an agent of Bandy's in doing so. Bandy's motion for summary judgment, heard a year before the April, 1990, trial was to dismiss the complaint against him. The Hesters certainly knew then of the conversation between Karen Bandy and Pam. If they ever intended to contend that the repossession was wrongful because of some promise Karen Bandy had made to Pam, that was the time to assert it. Yet they made no such claim. If the circuit judge had ruled on the summary judgment as he later did at the conclusion *839 of trial on the independent contractor issue, the complaint would have been dismissed by summary judgment.
Rule 2.10 of the Uniform Circuit Court Rules requires each side to submit to opposing counsel at least 24 hours prior to trial all the jury instructions it proposes to request from the court. The Hesters submitted no instruction embracing the theory of promissory estoppel based upon the alleged promise of Karen Bandy to Pam that the van would not be repossessed if the check was put in the mail on Friday, September 16. It is elementary that each party in a civil action has a duty to submit instructions embracing his theory of the case. Pulliam v. Ott, 246 Miss. 739, 150 So.2d 143 (1963); Ouille v. Saliba, 246 Miss. 365, 149 So.2d 468 (1963).
When the testimony of Pam above set forth was elicited, the Hesters even then did not move to amend their complaint.[3]
At the conclusion of the trial, the Hesters did not request any additional instruction embracing a reliance upon Karen Bandy's alleged promise as a reason for mailing the payment on Friday rather than delivering it to Coast Auto Sales. Indeed, it was upon the initiative of the circuit judge, and not through any request from the Hesters, that this one issue went to the jury on whether or not Bandy was liable:
I'm inclined to let it go to the jury on that one issue as to Mr. Bandy and that's whether or not  who wants to believe who, either Mrs. Bandy or Mrs. Hester about the 14th conversation about what was to be done by the 16th.
Following this ruling instruction C-20 was prepared submitting this issue to the jury.
In the instant case "fair notice" was not given to Bandy of the promissory estoppel issue by pleading, in argument over the summary judgment, or by requested instruction.
Of course, Rule 15 M.R.C.P. allows for amended and supplemental pleadings. However, Rule 15(a) allows such amendment as a matter of course only before a responsive pleading is served or if the pleading is for one which no responsive pleading is permitted, then before the matter has been placed on the trial calendar. Otherwise, a party may amend his pleading only by leave of Court or upon written consent of the adverse party. While at times pleadings are automatically amended to conform to the evidence, this occurs only when such issues are tried by the expressed or implied consent of the parties. Rankin v. Brokman, 502 So.2d 644 (Miss. 1987), held the trial court erred in allowing an amendment to the pleadings pursuant to Rule 15(b) to raise new issues where the defendant had objected:
Although the mortgage issues were indeed tried, they were not tried by consent of the parties, as the rule requires. On the contrary, counsel for the defense strongly objected to these issues being raised. The cases are firm that Rule 15(b) has no application if issues are brought in over the objection of a party.
Rankin v. Brokman, 502 So.2d at 646 (emphasis original).
In the instant case, Bandy objected strongly to the inclusion of the promissory estoppel issue first raised at trial by the trial court.
While a trial court has discretion to allow amendment and should do so freely under the proper circumstances, amendment should not occur when to do so would prejudice the defendant. Allowing the entire theory of liability to change at the conclusion of a three-day trial seriously prejudiced Bandy. From the complaint and conduct of counsel opposite, Bandy had the right to assume that the entire claim against him was grounded upon the theory of respondeat superior and that otherwise he had the right to repossess the vehicle in question. Clairvoyance by the defense would have been required to anticipate any contention beyond this. When both sides had rested, the issue was changed by the court from Bandy's having the clear right to repossess, but perhaps being liable based upon respondeat superior, because of Evans' tortious conduct, to Bandy's not having the *840 right to repossess. This drastically altered the basis upon which the case was brought to trial.
The circuit judge, therefore, erred in submitting the issue of promissory estoppel to the jury, at the trial's conclusion, and was correct in reversing his ruling upon the defendant's motion for a j.n.o.v.

INDEPENDENT CONTRACTOR DEFENSE
The Hesters further contend on appeal that the court erred in giving a directed verdict at the close of the evidence that Evans was an independent contractor, and therefore Bandy was not liable as his principal. We agree with Bandy's contention on appeal that the circuit judge was correct in ruling that under conventional standards, the relation between Bandy and Evans was that of an independent contractor. Bandy exercised no control over Evans, and only agreed to pay him $150.00 for this one job upon completion.
This, however, does not end our inquiry. Was Bandy entitled to a directed verdict even though under conventional standards Evans would have been an independent contractor? Considering the job for which Bandy hired Evans, is he entitled to make an independent contractor defense at all?
To answer this, we must first consider what rights Bandy had under Miss. Code Ann. § 75-9-503:
Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.
There was never any contention by the Hesters that Bandy was not a secured party who had a security interest in the van, and that they were not in default in the payments thereunder.
In such circumstances the secured party, in this case Bandy, had the right to take possession of the vehicle, and to take possession of it without any judicial process if it could be done without "breach of the peace." "Breach of the peace" is not defined by the U.C.C. or comment thereunder. Deavers v. Standridge, 144 Ga. App. 673, 674, 242 S.E.2d 331, 333, 23 U.C.C.R.S. 834 (1978); Anderson U.C.C., Vol. 9, § 9-503.222.
In pre-U.C.C. cases we have held that where a conditional sales contract by its terms gave the seller the right to repossess the collateral, he did not commit a trespass by simply going upon the debtor's private driveway and taking possession of the vehicle, where it was not done so "by oppressiveness, wantonness or maliciousness, or otherwise in reckless disregard of the legal rights of the plaintiff." Dearman v. Williams, 235 Miss. 360, 371, 109 So.2d 316, 321 (1959). The creditor has the right to repossess without court authority, but the seller "is not entitled `to regain possession by fraud, and if the taking is resisted the seller may not use force, but must resort to appropriate proceedings at law.'" Martin v. Cook, 237 Miss. 267, 272, 114 So.2d 669, 670 (1959) (quoting 78 C.J.S. Sales § 603 (1952)). In Butler v. Ford Motor Credit, 829 F.2d 568 (5th Cir.1987), the United States Court of Appeals, interpreting Mississippi law, held that under Miss. Code Ann. § 75-9-503, Ford Motor Credit Company, a secured party, had the right to go upon the driveway of the debtor and peaceably repossess a truck, where no one appeared and objected.
We hold that simply going upon the private driveway of the debtor and taking possession of secured collateral, without more, does not constitute a breach of the peace. The statute gives the secured party this right to same as if it were written in the contract. This, however, is the limit of the right to repossess without instituting legal action.
Long ago, in Commercial Credit Co. v. Spence, 185 Miss. 293, 297, 184 So. 439, 441 (1938), we recognized that a conditional sales contract which reserved title in the seller and gave the seller the right to repossess the collateral upon default without recourse to legal action gave the seller the right to do so peaceably. We then added:
Under such a contract, the authorities are in substantial agreement that the right to take the property from the possession of *841 the other party does not justify the use of force to take it,  it must be done without force or violence, and if possession cannot be so obtained, then resort must be had to the processes of the courts... . And it would be manifest, even in the absence of adjudication of it, that the rule could, in no event, admit the use of force or violence under this type of contract, leaving aside others. The majority of people are honest and yield peaceable obedience to their contractual obligations. When they do not so yield, it is, in most cases, because there is some reason worthy of impartial examination or consideration why they do not. To allow the holder of such contract to be his own judge, and to execute his judgment in any violent or forcible way he might choose, would be contrary to good order, would be provocative of retaliatory violence and breaches of the peace; wherefore, as a matter of public policy, no such right can exist.
Commercial Credit Co. v. Spence, 185 Miss. at 297-98, 184 So. at 441.
As to what does and does not constitute a breach of the peace in repossessing collateral, see generally Anderson's U.C.C., Vol. 9, §§ 9:503:22; 9:503:23; Marine Midland Bank-Central v. Cote, 351 So.2d 750, 22 U.C.C.R.S. 1298 (Fla.App. D.1 1977); Madden v. Deere Credit Services, Inc., 598 So.2d 860 (Ala. 1992); Nebraska v. Trackwell, 235 Neb. 845, 851, 458 N.W.2d 181, 185 (1990).
It is generally held that U.C.C. 9-503 does not authorize the secured party to repossess the collateral by forcible removal or over the protest of the debtor owner. Madden v. Deere Credit Services, Inc., 598 So.2d 860, 865 (Ala. 1992); General Finance Corp. v. Smith, 505 So.2d 1045 (Ala. 1987); Butler v. Ford Motor Credit, supra; Morris v. First National Bank and Trust Co., 21 Ohio St.2d 25, 254 N.E.2d 683 (1970); Nebraska v. Trackwell, supra; Midland Bank-Central v. Cote, 351 So.2d 750 (Fla.App. 1977); 22 U.C.C.R.S. 1298; Anderson's U.C.C., Vol. 9, § 9:503:22. Also see Restatement of Torts, § 185, § 183. In this respect Miss. Code Ann. § 75-9-503 simply codifies former law regulating self-help through repossession under conditional sales contracts authorizing the vendor to repossess the collateral. "[T]hrough the use of that phrase [breach of the peace] the [U.C.C.] `draftsmen intended to build upon the prior history of the self help remedy.'" Madden v. Deere Credit Services, Inc., 598 So.2d at 864 (quoting Comment, Breach of Peace and Section 9-503 of the Uniform Commercial Code  a Modern Definition for an Ancient Restriction, 82 Dick.L.Rev. 351, 354-55 (1978)).

EVANS COMMITTED A TORT
Evans' decision to repossess the van in the early morning hours from the Hester residence was deliberate. His purpose, of course, was to make a "quick snatch" of the van and get away, all without the knowledge of the Hesters. This was a tactic which guaranteed generating fright or anger, or both, if discovered in progress by the Hesters. It was fraught with the peril of provoking a breach of the peace of the most serious kind.
When Evans was in fact discovered and Hester attempted to physically resist the repossession, this terminated Evans' right to continue, because in doing so he caused a breach of the peace. Evans did not cease, but carried his repossession on out, and this was without legal authority. He committed a tort in continuing over Hester's protest.

LIABILITY OF BANDY
It is well settled that one who contracts with an independent contractor to perform certain work or service which is not illegal, dangerous or harmful, is not liable for torts committed by him. Blackmon v. Payne, 510 So.2d 483 (Miss. 1987); Mississippi Power Co. v. Brooks, 309 So.2d 863 (Miss. 1975). Where, however, the work or service to be performed in itself entails the commission of some illegal, dangerous or tortious act, the rule obviously cannot apply, because in such instance the principal and the independent contractor both play an integral part, are both proximate causes, of whatever harm ensues. National Rating Bureau, Inc. v. Florida Power Corp., 94 So.2d 809 (Fla. 1956); Peairs v. Florida Publishing Co., 132 So.2d 561 (Fla.App. 1961); Morgan v. Big Woods Lumber Co., 198 Ky. 88, 249 S.W. 329 *842 (1923); Sun Sand Co. v. County Court of Fayette County, 96 W. Va. 213, 122 S.E. 536 (1924).
The person who contracts the services of a lawyer, physician, architect or a home builder under a lock and key contract has no reason to expect that in performing the contract a tort will be committed against some third party. There is nothing about the task that incurs such a risk under normal circumstances. Therefore, the principal is not held liable under the doctrine of respondeat superior for some unlikely and unexpected tort committed by the independent contractor. The scenario is quite different when the principal engages the services of an independent contractor to perform an illegal, highly dangerous or some other act that could reasonably entail commission of a tort in its performance. In such event the principal is an accessory before the fact to the independent contractor's conduct, without which there would have been no injurious conduct by the independent contractor. The party retaining an independent contractor for such a purpose is a principal in more than one sense of the word.
The distinction was recognized and well expressed in Bonaparte v. Wiseman, 89 Md. 12, 42 A. 918 (1899), when the plaintiff and defendant owned adjacent lots, and the defendant hired a contractor to excavate his lot in order to construct a warehouse. In doing so the contractor weakened the subsoil supporting the foundations to the plaintiff's house, causing it to settle and crack.
In the suit against the contractor and owner, the owner interposed the independent contractor defense. The Maryland Supreme Court recognized the well-established rule that a principal was not liable for negligent acts of an independent contractor in most circumstances, but there were others which did not:
[T]he distinction is well established between the cases in which, when work is being done under a contract, an injury is caused by negligence in a matter collateral to the contract, and those in which the thing contracted to be done causes the mischief. In the former class of cases the employer is not liable for the injury, but in the latter he is... . "It is equally clear that the law devolves upon every one, about to cause something to be done which will probably be injurious to third persons, the duty of providing that reasonable care shall be taken to obviate its probable consequences. In this class of cases, the doctrine of respondeat superior has no application. His liability is based upon the principle that he cannot set in motion causes dangerous to the person or property of others without taking all reasonable precautions to anticipate, obviate, and prevent their probable consequences." .. . "Even if the relation of principal and agent or master and servant do not, strictly speaking, exist, yet the person for whom the work is done may still be liable if the injury is such as might have been anticipated by him as a probable consequence of the work let out to the contractor... ."
Under these authorities, the appellant would have been liable for injury happening to the house of the appellee from the excavation of his lots if it might reasonably have been anticipated that such injury would probably occur as a consequence of an excavation made in the location and to the depth appearing from the evidence in this case. The question as to whether such injury might reasonably have been anticipated as a probable consequence of the excavation was a question of fact for the jury.
Bonaparte v. Wiseman, 42 A. at 919. See also Philadelphia, B & W R. Co. v. Mitchell, 107 Md. 600, 69 A. 422, 423-24 (1908); Levi v. Schwartz, 201 Md. 575, 583, 95 A.2d 322, 327, 36 A.L.R.2d 1241, 1249 (1953).
The cases make it plain that the mere employment of an independent contractor will not always relieve the principal from liability for damage done by the contractor. If the injury that occurs is such as might have been anticipated as a probable consequence of the execution of the work let out to the contractor under the instructions given by the employer, the employer, as well as the contractor, may be held liable.
Samson Construction Co. v. Brusowankin, 218 Md. 458, 147 A.2d 430, 434 (1958).
*843 This principle was followed in Associates Discount Corp. v. Hillary, 262 Md. 570, 278 A.2d 592, 596-97 (1971), a case analogous to this case, in which the conditional sales vendor was held liable for a tort committed by employees of the firm retained to repossess a car. See also King v. Loessin, 572 S.W.2d 87 (Tex. App. 1978).
The principle, however [holding employer liable for works of independent contractor] is applicable only to work not of common occurrence which of itself involves risk of serious harm to others.
South Carolina Natural Gas Co. v. Phillips, 289 F.2d 143, 147 (4th Cir.1961). As to non-delegable duties which may not be assigned to an independent contractor, see also D.L. Fair Lumber Co. v. Weems, 196 Miss. 201, 16 So.2d 770 (1944), modifying 15 So.2d 505 (1943); Yazoo & M.V.R. Co. v. Gordon, 184 Miss. 885, 186 So. 631 (1939).
We likewise hold as a sound and salutary principle that when one employs another to perform a task in which a serious danger to person or property, a crime, or some tort can reasonably be anticipated in its performance, it is no defense to say the act causing the harm was committed by an independent contractor.
In the vast majority of cases it will be readily apparent that the work being performed either was or was not inherently dangerous, illegal, or likely to entail a tort in its performance, and a circuit judge can make the determination as a matter of law. Borderline cases should be submitted to a jury. Bonaparte v. Wiseman, 42 A. at 919.
From the record before us, it appears that a jury issue was presented on whether Bandy could reasonably have anticipated Evans to commit a tort in repossessing the van, and the circuit judge erred in sustaining Bandy's defense based upon Evans' being an independent contractor.
We hastily add that the circuit judge should not be faulted for his ruling, because he was correct in sustaining the independent contractor defense on the ground presented. Bandy's counsel provided no assistance to the court.
Bandy has assigned on appeal, however, that the court erred in dismissing the case against him as a matter of law on the ground that Evans was an independent contractor. Although for an entirely different ground than asserted on appeal by Bandy, we find that the circuit judge did err in sustaining Bandy's defense that he was not liable because Evans was an independent contractor.
Accordingly, we reverse and remand for proceedings not inconsistent with this opinion.[4]
REVERSED AND REMANDED.
DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
McRAE, J., concurs in part and dissents in part with separate written opinion joined in part by BANKS, J.
McRAE, Justice, concurring in part/dissenting in part:
I agree with the majority's decision to reverse the circuit court's entry of a j.n.o.v. in favor of Bandy and grant a new trial, but disagree with its relegation of the issue of punitive damages to a mere footnote on the last page of the opinion. In light of our decision in Ivy v. General Motors Acceptance Corp., 612 So.2d 1108, 1111-12 (Miss. 1992), the $83,920.00 judgment against Evans and Bandy should be reinstated. The majority properly affirmed the jury's finding that Evans committed a tortious breach of the peace when he continued his attempt to repossess Hester's van from his property over his protestations. However, whether Evans is found to be an agent, employee or independent contractor, Bandy, too, is liable for Hester's injuries. Moreover, because of the particularly egregious circumstances of the repossession, the circuit judge erred in refusing *844 to instruct the jury on the issue of punitive damages.
I agree with the majority's finding that the circuit court erred in sustaining Bandy's independent contractor defense. However, in determining whether Bandy may be found liable, it matters not whether Evans was an agent, employee or an independent contractor. In W.J. Runyon & Son, Inc. v. Davis, 605 So.2d 38 (Miss. 1992), we effectively eviscerated the distinction that had been drawn between the labels of "employee" and "independent contractor." Finding that Runyon, a road contractor, was liable for the negligence of Whigham, a self-employed independent hauler hired to transport asphalt from Runyon's plant to a construction site, we stated:
Shorn of its mythology and elaborate factor analyses, the question may be simply put: whether the project owner maintains a significant de jure right or de facto power of control over the performance of aspects of the work from which the injury has arisen or to which it is reasonably incident. Magee v. Transcontinental Gas Pipe Line Corp., 551 So.2d 182, 186 (Miss. 1989). Where the accident arises out of or in connection with work activities the master had a de jure right or de facto power to control, or as a reasonable incident thereto, the master should be vicariously liable for the servant's defaults. This is no precise formula, nor is it susceptible of mechanical application. Over a range of cases we see we have not shorn it of its shades of gray. Still, it is the better framing of the question, and an affirmative answer yields vicarious liability. A negative answer and the plaintiff must look to the tortfeasor alone.
605 So.2d at 46. There is no question that Bandy had both a legitimate right and the actual power to require Evans, or any other repossessor working for him, to perform his task so as not to cause a breach of the peace as set forth in U.C.C. § 9-503. Accordingly, despite the label we attach to Evans, Runyon controls the question of Bandy's liability for Evans' torts. Despite the majority's exhaustive discussion of employee and independent contractor status, it attempts to sidestep Runyon. Nevertheless, it reaffirms the basic premise of Runyon when it states:
We likewise hold as a sound and salutary principle that when one employs another to perform a task in which a serious danger to person or property, a crime, or some tort can reasonably be anticipated in its performance, it is no defense to say the act causing the harm was committed by an independent contractor.
Op. at 843. If the majority will not expressly reject or accept our holding in Runyon, the case, at the very least, must be remanded for consideration of the issue of agency.
On appeal, the Hesters contend that the circuit court erred in refusing to grant their requested jury instruction on the issue of punitive damages. In Ivy, we reaffirmed that punitive damages may be appropriate in self-help repossession cases where the repossession was accompanied by "`malice, fraud, oppression or wilful wrong evincing a disregard of the rights' of the debtor." 612 So.2d at 1118; Bradley v. Associates Discount Corp., 230 Miss. 131, 138, 92 So.2d 468, 471-2 (1957). See generally, Jonathan M. Purver, Annotation, Punitive Damages for Wrongful Seizure of Chattel by One Claiming Security Interest, 35 A.L.R.3d 1016 (1971 and Supp. 1993). We explained that:
a creditor must do more than cause a mere breach of peace before he or she can be held liable for punitive damages. Restated, a breach of peace may be deemed tortious  for which the creditor will be held liable for actual and consequential damages  but the tortiousness of the conduct must rise to a heightened level before punitive damages may be imposed.
Ivy, 612 So.2d at 1118 (emphasis in original). As we stated in Kirkwood v. Hickman, 223 Miss. 372, 78 So.2d 351 (1955), even when no violence is involved in the repossession, punitive damages may be warranted when a trespass to retrieve the property is conducted in an "intentional and highhanded manner." 223 Miss. at 385, 78 So.2d 351.
Evans' actions in repossessing the Hesters' van clearly were both "intentional" and "highhanded." He admitted that he wanted to see if his assistant that night, Bill Christner, "had what it takes" to succeed in the *845 repossession business. The two men drove up to the Hester's property at 3:00 a.m. with the lights of the wrecker turned out, checked the vehicle identification number of the van with a pen light, and moved the Hesters' son's Camaro with a "quick snatch harness." They then attached the harness to the van and began to tow it down the driveway. Hester came to the door with his shotgun and shouted at them to stop. While Hester's wife and four children watched, Evans and his assistant kept on towing, with Hester in full pursuit. As I stated in my dissent to Ivy, where the majority affirmed the overturning of a jury award for punitive damages, "[i]f the conduct of the defendants does not qualify as `reckless disregard for the rights of the chattel holder,' then I am at a loss to imagine what might fit the description." 612 So.2d at 1120.
The facts recited herein are far more outrageous than those in Ivy, where the agent waited until after sunrise to repossess the debtor's van and was "very nice" about allowing Ivy to retrieve his belongings from the vehicle. Yet, the question of punitive damages was put to the jury in that case. It is well-established that a party is entitled to have jury instructions given regarding all material issues presented in the pleadings or the evidence. Glorioso v. Young Men's Christian Association of Jackson, 556 So.2d 293, 295 (Miss. 1989); Barkley v. Miller Transporters, Inc., 450 So.2d 416 (Miss. 1984). The Hesters sought punitive damages in their complaint and the evidence adduced at trial supports their claim. Accordingly, it should be found that the trial judge erred in refusing to put the issue to the jury.
In picking and choosing which jury instructions to discuss, the majority belabors its point that the circuit court erred in granting Instruction C-20, which Bandy asserted in his motion for j.n.o.v. The majority finds that the circuit court erred in giving the instruction because Bandy had no "notice" that promissory estoppel was an issue in the case. It is of little consequence that Hester's attorney did not submit an instruction twenty-four hours before trial as required by Rule 2.10 of the Uniform Circuit Court Rules. Rule 3.09 places no such time constraints on the judge's issuance of instructions, and the defendants' objections were noted in the record as required by the rule. The majority likewise finds that the pleadings provided no notice that Pam Hester had relied on Karen Bandy's representations. Though the complaint may not be drafted as artfully as the majority might desire, Paragraph 6 of the Complaint states as follows:
That on or about Wednesday, September 14, 1988, the Plaintiff, Pam Hester, talked with Karen Bandy, an agent of the Defendant, and advised that she was placing her payment in the mail for the month of August, which payment was mailed to the Defendant on September 15, 1988.
Bandy responded, averring:
These answering defendants admit that on or about Wednesday, September 14, 1988, the plaintiff, Pam Hester, talked with Karen Bandy, an agent of the defendant and advised she was placing her payment in the mail for the month of August. However, these answering defendant[s] deny each and every other material allegation or conclusion of law contained in Paragraph 6 of plaintiff's Complaint.
Surely this provided Bandy with notice that the September 14, 1988, conversation between the two women was at issue, and further, that some connection existed between the conversation and Pam's representation that a check was forthcoming by mail. As promised, she mailed the check on September 15. This was consistent with Hester's practice over the prior eleven months of mailing checks or money orders. Since this is a notice pleading state, Bandy was not required to recount every detail of the conversation. If the majority believes otherwise, it is time we ripped out the form complaints in Appendix A to the Mississippi Rules of Civil Procedure and threw them all away!
Accordingly, while I concur with the majority's finding that Bandy, too, is liable for Hester's damages, I disagree with its rationale for so holding. I further disagree with the majority's emphasis on the notice issue.
BANKS, J., joins this opinion in part.
NOTES
[1] At no time did the Hesters inform the court that even if Evans was an independent contractor, the repossession was wrongful, anyway, because Bandy had no right to repossess; Pam had been told by Karen Bandy that if she mailed her delinquent payments by Friday, September 16, this would be satisfactory. The significance of the failure of the Hesters to give this as a reason to deny the summary judgment will be apparent in the discussion below.
[2] A motion was made to amend the complaint after the trial and the court had ruled on the motion for j.n.o.v.
[3] The Hesters did finally move to amend their complaint following trial, a jury verdict, and a j.n.o.v.
[4] Plaintiffs contest the disposition of their punitive damages claim. Because we remand for a new trial, we make no disposition of the punitive damages issue and the question of punitive damages remains viable for further proceedings. Should the evidence at any subsequent trial support the granting of a punitive damages instruction, it should be given.