# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1998-CA-01727-COA

**WILLIE ALEXANDER AND CARLA VEAL ALEXANDER**          **APPELLANTS**

**v.**

**LYNELL BROWN AND PAMELA BROWN**          **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/22/1998 |
| TRIAL JUDGE: | HON. WILLIAM JOSEPH LUTZ |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | WES W. PETERS |
| ATTORNEY FOR APPELLEES: | DAVEY L. TUCKER |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | APPELLANT'S CASE FOR TRESPASS DISMISSED. MR. ALEXANDER FOUND IN CONTEMPT OF PROTECTIVE ORDER AND ORDERED TO PAY $1,117.50 IN ATTORNEY'S FEES. |
| DISPOSITION: | AFFIRMED IN PART, REVERSED AND REMANDED IN PART-7/25/00 |
| MOTION FOR REHEARING FILED: | 8/23/2000; denied 11/7/2000 |
| CERTIORARI FILED: | 11/21/2000; granted 1/18/2001 |
| MANDATE ISSUED: | |

EN BANC:

KING, P.J., FOR THE COURT:

¶1. Willie and Carla Alexander, (Alexanders) have appealed the dismissal, by the Madison County Chancery Court, of their trespass action seeking damages from Lynell and Pamela Brown, (Browns). Willie Alexander has also appealed his conviction of contempt. The Alexanders raise three issues: (1) whether the trial court erred by dismissing the Alexanders' claim because it failed to establish a prima facie case of trespass and damages, (2) whether the trial court erred by refusing to allow the Alexanders to reopen their case after the court informed them of the missing proof, and (3) whether the trial court erred in determining that Willie Alexander was guilty of contempt.

¶2. This Court finds merit in the Alexanders' first issue and remands for a new trial on the issue of trespass. The finding of contempt is affirmed.

## FACTS

¶3. The Browns purchased Lot 6 in Ingleside East Subdivision located in Madison County. The Alexanders who had constructed their home on Lot 9, also owned Lot 5 which adjoined the Browns' lot. After some

discussion between the two couples about a prospective house site on the Browns' lot, Alexander advised Brown that he did not want any work done on his adjacent lot. Alexander showed Brown what he considered as the boundary and suggested that Brown employ a surveyor and obtain a survey prior to construction.

¶4. Soon thereafter, Brown began bulldozer work to prepare his lot for construction. Mrs. Alexander and her neighbor, Kelly Kersh, the owner and resident of Lot 7, on Thursday witnessed a bulldozer cross onto Lot 5 as it was preparing Lot 6. Mrs. Alexander, accompanied by Ms. Kersh approached Buddy McGowan, the bulldozer operator, and asked him to stay off Lot 5. The following day, Ms. Kersh again witnessed the bulldozer at work on Lot 5, the Alexanders' property. She informed Mrs. Alexander, who called Mr. Alexander at his job and informed him that the bulldozer operator was again damaging Lot 5. Mr. Alexander left his job and came to deal with this problem. Alexander confronted McGowan about the trespass and ascertained that he was employed by the Browns. The bulldozer had removed dirt, grass and young trees from a strip of Lot 5, 20' wide by 150' long.

¶5. The Alexanders requested that the Browns compensate them for the damage to Lot 5. The Browns refused and sought a declaratory judgment that no trespass had occurred on Lot 5. The Alexanders responded by filing an action for damages caused by the Browns' trespass. These actions were consolidated for disposition.

¶6. Pending resolution of this matter, the parties entered into an agreed order that they not come within 100 yards of each other. It is this agreed order of which Mr. Alexander was found in contempt.

¶7. The trial court required the Alexanders to first go forward with their trespass action. They presented seven witnesses who testified on the issue of trespass.

¶8. At the end of the Alexanders' case-in-chief, the Browns moved to dismiss for failure to make a prima facie case. The trial court granted this motion but did not include in the record the basis for its decision. The Alexanders requested that the trial court reconsider its ruling. In denying the motion for reconsideration the trial court, for the first time, gave an indication of the basis upon which it dismissed the Alexanders' case.

¶9. The chancellor's findings in denying the Alexander's motion included the following: (1) a trespass had occurred, (2) the Alexanders' property had been damaged, (3) that Mr. McGowan had some type of employee/employer relationship with the Browns,(4) Mr. McGowan used a bulldozer on the Alexanders' property on that Thursday (5) Mr. McGowan had not been placed on the Alexanders' lot on Friday when the bulk of the damage was done, and (6) Mr. McGowan was an independent contractor.

¶10. The Browns dropped their request for declaratory relief but pursued sanctions against Mr. Alexander for violation of the protective order.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED BY DISMISSING THE ALEXANDERS' CLAIM BECAUSE IT FAILED TO ESTABLISH A PRIMA FACIE CASE OF TRESPASS AND DAMAGES

¶11. In bench trials, a motion to dismiss made at the conclusion of the plaintiff's case-in-chief is within the sound discretion of the court and is reviewable only for abuse of discretion. M.R.C.P. 41 cmt. The court

may then make findings as provided under Mississippi Rule of Civil Procedure 52(a).

¶12. A trespasser is one who enters upon another's premises "without license, invitation, or other right, and intrudes for some definite purpose of his own, or at his convenience, or merely as an idler with no apparent purpose, other than, perhaps, to satisfy his curiosity." *Saucier v. Biloxi Reg'l Med. Ctr.*, 708 So. 2d 1351, 1357 (Miss. 1998).

¶13. The Restatement (Second) of Torts § 163 outlines the requisite intent for trespass to land:

> If the actor intends to be upon the particular piece of land, it is not necessary that he intend to invade the other's interest in the exclusive possession of his land. The intention which is required to make the actor liable under the rule stated in this Section is *an intention to enter upon the particular piece of land in question, irrespective of whether the actor knows or should know that he is not entitled to enter*. It is, therefore, immaterial whether or not he honestly and reasonably believes that the land is his own, or that he has the consent of the possessor or of a third person having power to give consent on his behalf, or that he has a mistaken belief that he has some other privilege to enter.

W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 13 at 73 (5th ed. 1984) (emphasis added). In addition to entering land, the tort of trespass can be committed by placing objects on the property, *causing a third party to go onto the property*, or remaining on the property after the expiration of a right of entry. KEETON § 13 at 72-73 (emphasis added). In other words, "the intent required as a basis for liability as a trespasser is simply an intent to be at the place on the land where the trespass occurred." KEETON § 13 at 73.

¶14. There are two basic flaws in the chancellor's decision. They are his findings (1) there was nothing to connect Mr. McGowan to the damage done on Friday, and (2) Mr. McGowan was an independent contractor.

¶15. Kelly Kersh testified to seeing the bulldozer digging on the Alexanders' property on that Friday. This testimony is found in the trial transcript at page 30.

¶16. Mr. Alexander testified to confronting Mr. McGowan on his property on Friday.

¶17. His testimony is found in the record on pages 92-94. The testimony of these two witnesses is sufficient to connect Mr. McGowan to the Friday damage.

¶18. The chancellor found that Mr. McGowan was an independent contractor and that therefore the Browns were not responsible for his actions. An employer is not generally liable for the torts of an independent contractor. *Hester v. Bandy*, 627 So. 2d 833,841 (Miss. 1993). However, the trial court cannot assume that an independent contractor relationship exists. There must be some proof of that relationship. The record is absolutely devoid of any evidence to establish that Mr. McGowan was an independent contractor. In the absence of such evidence, the chancellor committed reversible error in holding that McGowan was an independent contractor for whom the Browns had no responsibility.

¶19. A finding by the chancellor which is not supported by the evidence is an abuse of discretion *Bullock v. Bullock*, 733 So.2d 292, 297, (¶ 26) (Miss. Ct. App. 1998). Because there was no proof, nor any attempt at proof, of an independent contractor relationship, this Court finds that the chancellor abused his discretion.

¶20. The Alexanders proved (1) trespass, (2) damage by Mr. McGowan and (3) that Mr. McGowan was employed by the Browns.

¶21. The case presented by the Alexanders was weak and contained significant portions of hearsay which were admitted by the chancellor. Weak though it may have been, it raised a significant question regarding the Browns and their relationship to the damage to the Alexanders' property. This was such a prima facie case, which at the very least required that the Browns be called upon to present a defense.

¶22. Because the chancellor abused his discretion and short circuited this process, we reverse and remand for a new trial on the trespass claim.

¶23. Our reversal on this issue renders moot the Alexanders' second issue:

## II. WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT WILLIE ALEXANDER WAS GUILTY OF CONTEMPT

¶24. The factual findings of the chancery court in a civil contempt case are affirmed unless manifest error is present and apparent. *Premeaux v. Smith*, 569 So. 2d 681, 683 (Miss. 1990).

¶25. A person may be imprisoned or fined for either civil or criminal contempt. *Knowles v. State*, 708 So. 2d 549 (¶ 26) (Miss. 1998). Where the purpose for the sanction is to compel compliance with a court order, the matter involves civil contempt. *Hinds County Bd. of Supervisors v. Common Cause of Mississippi*, 551 So. 2d 107, 120 (Miss. 1989). If a fine is imposed for civil contempt, it is generally paid to an aggrieved party and not to the court since the fine attempts to measure and remedy the damage suffered. 2 JEFFREY JACKSON, MISSISSIPPI CIVIL PROCEDURE § 16A:4 at 16A-7 (1998). In *Varvaris v. State*, 512 So. 2d 886, 886 (Miss. 1987), the Mississippi Supreme Court held that:

> If the purpose of the proceedings is to coerce action or non-action by a party, the order of contempt is characterized as civil. This type contempt proceeding is ordinarily instituted by one of the parties to the litigation who seeks to coerce another party to perform or cease performing an act. The order of contempt is entered by the court for the private benefit of the offended party. Such orders, although imposing a jail sentence, classically provide for termination of the contemnor's sentence upon purging himself of the contempt. The sentence is usually indefinite and not for a fixed term. Consequently, it is said that the contemnor "'carries the key to his cell in his own pocket." (citations omitted)

¶26. However, if the order is entered as unalterable punishment for having violated a court directive, the matter involves criminal contempt. *Common Cause*, 551 So. 2d at 120-21. Whether a fine or incarceration, the punishment is just that--a set penalty for which a contemnor's change of heart will not release him. JACKSON, CIVIL PROCEDURE, § 16A:4 at 16A-6.

¶27. The contempt judgment rendered in this case dated September 30, 1998, ordered Mr. Alexander to pay $1117.50 to Mr. Brown within forty-five days, or else be taken into the custody of the Madison County Sheriff's Department if the debt was not paid. Therefore, under the case law discussed above, this matter is one of civil contempt even though the chancellor indicated that it was criminal contempt at the hearing.

¶28. Brown contends that Alexander, through verbal abuse and violent threats, bothered, harassed, threatened, and intimidated family, friends, employees and Brown on July 19, 1998 in violation of the

agreed protective order that required the parties to remain 100 yards apart. Several of Brown's employees who were present during the alleged contemptuous actions of Alexander stated that they saw Brown and Alexander talking within close proximity to each other; however, they could not hear what was discussed. The record indicates that some profanity may have been exchanged between the two men but that the actions did not culminate in fisticuffs between Brown and Alexander. When the property dispute arose, Alexander and Brown agreed to the protective order which restricted their interaction. Ironically, Alexander now complains that its provisions were virtually impossible to comply with if both Brown and he were on their adjoining properties at the same time. Nonetheless, the record reflects evidence of Alexander's contemptuous behavior that violated the agreed protective order, and it was not manifest error for the lower court to hold Alexander in contempt.

¶29. **THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT IS REVERSED AND REMANDED FOR A NEW TRIAL ON THE MERITS ON THE ISSUE OF TRESPASS. WILLIE ALEXANDER'S CONVICTION OF CONTEMPT IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED EQUALLY TO APPELLANTS AND APPELLEES.**

   **BRIDGES, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR. SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., AND MOORE, J. MYERS, J., NOT PARTICIPATING**.

   SOUTHWICK, P.J., DISSENTING:

¶30. The majority reverses, finding the chancellor's decision that the defendants were not liable for a trespass to be clearly erroneous. I respectfully disagree.

¶31. Certainly a trespass occurred. The chancellor so found. The issue is whether the trespass was committed by the defendant lot-owner. The chancellor found that an independent contractor committed the tortious acts, without any evidence being presented that the defendants caused them. That decision was not clearly erroneous factually or questionable legally. I would affirm.

¶32. What is important for my disagreement with the majority is that the chancellor found that the plaintiff Alexanders had failed to present evidence creating an issue of the Browns's responsibility for the trespass. The majority turns the chancellor's view around, and holds that absent proof that the bulldozer operator *was not* the defendants' employee, the case must be permitted to proceed.

¶33. In my view the operator's status as an independent contractor is not an affirmative defense. Proving that he was an agent or employee is affirmatively the plaintiff's burden. That means when the plaintiff is ready to release the evidentiary obligation to the defendant at trial, enough must have been already shown to prove the bulldozer operator's status. If the status of the operator were an affirmative defense, this would mean that the defendants had accepted as true all the assertions of the complaint but then raised this as a basis for avoidance of liability. *Hertz Commercial Leasing Division v. Morrison*, 567 So.2d 832, 834-35 (Miss.1990). To the contrary, the plaintiffs had to prove that the defendants were liable for the bulldozer operator's actions *because* the operator had the status of an employee. The defendants' position that the operator was an independent contractor was not an acceptance of the plaintiff's assertions. It was a denial.

¶34. The prima facie case that plaintiffs made concerned a trespass solely by the bulldozer operator. If a plaintiff wants to sue B for the actions of A, it is the plaintiff's obligation to prove the responsibility of B for

A's actions. No prima facie case exists until that is shown.

¶35. The majority cites authority that a person can be liable for trespass by causing someone else to commit the tortious act. W. Page Keeton, Prosser & Keeton on the Law of Torts §13 (5th ed. 1984) at 73. I have no disagreement with that, but the point is that no evidence was presented that these defendants *caused* this trespass. The only evidence was that the Browns employed the bulldozer operator; that does not make them liable for his torts. As Dean Keeton further states in this section, the intent necessary for a trespass is one "to be at the place on the land where the trespass allegedly occurred." *Id.* It was the absence of any proof that the Browns had this intent that the chancellor relied upon to reject liability.

¶36. One of the cases relied upon in this treatise concluded that everyone who assists or advises a trespasser in committing a trespass is also liable for the tort. *Id.* n. 47, *citing Kirby Lumber Co. v. Karpel*, 233 F.2d 373, 375 (5th Cir. 1956). There was no evidence of such advice or assistance.

¶37. Someone who employs a contractor is not generally liable for the torts that he commits:

> It is well settled that one who contracts with an independent contractor to perform certain work or service which is not illegal, dangerous or harmful, is not liable for torts committed by him. Where, however, the work or service to be performed in itself entails the commission of some illegal, dangerous or tortious act, the rule obviously cannot apply, because in such instance the principal and the independent contractor both play an integral part, are both proximate causes, of whatever harm ensues.

*Hester v. Bandy,* 627 So.2d 833, 841 (Miss. 1993) (interior citation removed). I find this general rule to apply, as there was nothing illegal, dangerous, or harmful about having this lot cleared in order for the Browns to build their own home. The exception that applies when the opposite conditions exist, is irrelevant here.

¶38. I would affirm.

**McMILLIN, C.J., AND MOORE, J., JOIN THIS SEPARATE OPINION.**